**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JESSICA T. T.,[1]**

     **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　**No. 1:24-cv-01179-KWR-JHR**

**FRANK BISIGNANO,**
***Commissioner of the Social Security Administration*,**

     **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION TO DENY MOTION
TO REMAND [DOC. 12]**

THIS MATTER comes before the Court on Plaintiff's Opposed Motion to Reverse or Remand [Doc. 12]. The Commissioner filed a response [Doc. 18] and Plaintiff replied [Doc. 19]. Presiding District Judge Kea W. Riggs referred this matter to me for proposed findings and a recommended disposition on May 13, 2025. [Doc. 16]. I have reviewed the parties' briefing, the administration record [Doc. 8] ("AR"), and applicable law. I RECOMMEND that the Court DENY Plaintiff's motion to remand and AFFIRM the Commissioner's final decision.

## I.　　PROCEDURAL BACKGROUND

Plaintiff filed an application for supplemental security income ("SSI") on July 13, 2020, followed by an application for disabled widow's benefits. (AR 413, 423).[2] Her SSI claim was denied on October 19, 2020, and again on reconsideration on November 13, 2023. (AR 293–94, 316). Plaintiff requested a re-hearing before an Administrative Law Judge ("ALJ"), and a telephonic hearing was held before ALJ Katherine Brown on June 3, 2024. (AR 11). On June 21,

---

[1] Plaintiff's last name is abbreviated to her initials in the interest of privacy.
[2] The ALJ stated Plaintiff filed her application for widow's benefits on October 7, 2022, but the application in the record is dated December 20, 2022. (AR 11, 423).

2024, the ALJ issued a decision finding Plaintiff was not disabled because she could still perform past relevant work. (AR 22). Plaintiff appealed to the Administration's Appeals Council; the council denied her request for review, making the ALJ's determination the Commissioner's final decision. (AR 1). Plaintiff then appealed to this Court pursuant to 42 U.S.C. § 405(g). [Doc. 1].

## II.    STANDARD OF REVIEW

When a party appeals an adverse disability decision the court must affirm if the ALJ applied correct legal standards and supported her factual findings with "substantial evidence." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). Judicial review calls for common sense by setting aside technicalities in favor of whether the court can follow the ALJ's reasoning and application of law. *Keys-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Failure by the ALJ to follow legal standards under appropriate circumstances will warrant reversal "independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). At the same time, some errors do not warrant reversal if the ALJ's findings are sufficiently thorough and supported to render the error harmless. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005).

Evidence is "substantial" when a reasonable mind would accept it as adequate support for the ALJ's conclusion—more than a scintilla but less than a preponderance of the record. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the whole record to determine if the ALJ met the standard, including any evidence that may undercut or detract from his findings. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). But the court may neither "reweigh the evidence nor substitute its judgment for . . . the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The reviewing court

must affirm, even if it would resolve the matter differently, unless the record overwhelms the ALJ's factual findings or her decision rests on unsupported conclusions. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

### III.       THE COMMISSIONER'S FINAL DECISION

A claimant who seeks supplemental security income under the Social Security Act must demonstrate that she cannot engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A five-step process guides whether the claimant satisfies that definition of disability. 20 C.F.R. § 416.920(a)(4).[3] Those five steps address (1) whether the claimant is still engaged in substantial gainful activity; (2) whether the claimant is suffering from any impairments significantly limiting her ability to perform basic work activities; (3) whether those impairments meet or equal the criteria of a disabling impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant's residual functional capacity ("RFC") would preclude her ability to perform her past relevant work, and finally; (5) whether the claimant's age, education, experience, and residual functional capacity would enable her to perform a substantial gainful activity existing in significant numbers in the national economy. *Id.* In sum, a claimant qualifies for supplemental security income if her medical impairments are per se disabling or otherwise prevent her from performing her past work and any other viable work options. *See id.* § 404.1505(a). Plaintiff bears the burden of proof for the first four steps, but the burden shifts to the Commissioner at step five

---

[3] Regulations for determining whether a claimant is disabled for both SSI and disability insurance benefits ("DIB") are identical but codified in two separate parts in the Code of Federal Regulations. Part 404 of Title 20 governs DIB while Part 416 governs SSI. The Court cites the applicable regulations in Part 416, but the analogous regulations in Part 404 apply as well. A claim for disabled widow's benefits pursuant to Title II of the Social Security Act follows an identical process for determining disability, except the claimant must show she cannot engage in *any* gainful activity. 42 U.S.C. § 423(d); 20 C.F.R. § 404.1520(a)(2).

to prove the claimant could still perform work existing in significant number in the national economy. *Lax*, 489 F.3d at 1084 (citation omitted).

**A.      The ALJ's Findings at Steps One, Two, and Three.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 1, 2019, her alleged onset date of disability. (AR 14). At step two, the ALJ found Plaintiff suffered from the following severe impairments: Sjogren's syndrome, rheumatoid arthritis, fibromyalgia, mild degenerative disc disease, and obesity. (AR 14). The ALJ also found non-severe medically determinable impairments of depressive disorder and anxiety disorder. (AR 14). The ALJ noted that Plaintiff had reported symptoms of dizziness, but "no associated medically determinable impairment" had been established. (AR 15). However, the ALJ did not foreclose consideration of dizziness altogether and instead treated it as a symptom "in conjunction with [Plaintiff's] medically determinable severe impairments." (AR 15).

Proceeding to step three, the ALJ found that none of Plaintiff's impairments or combination of impairments met nor "medically" equaled the severity of a listed disability. (AR 16). The ALJ also made findings on the severity of Plaintiff's mental impairments pursuant to the "paragraph B" criteria. *See* 20 C.F.R. § 404.1520a(c)(3). On a scale of none, mild, moderate, marked, and extreme, a claimant that has one extreme mental limitation or two marked mental limitations in four functional areas may satisfy a listed mental disability if other criteria are met. *Ricks v. Kijakazi*, No. 21-cv-00942, 2023 WL 2706569, at *5 (D.N.M. Mar. 30, 2023). In contrast, a moderate limitation means a claimant retains a "fair" ability to function in the area independently, appropriately, and effectively. *Id.* The ALJ found Plaintiff had mild limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself, and no limitation in understanding, remembering, or applying information. (AR 14–15).

**B.      The ALJ's RFC Analysis and Step Four Findings.**

4

The physical exertion requirements for types of work are categorized as sedentary, light, medium, heavy, or very heavy work. 20 C.F.R. § 416.967. The ALJ determined that Plaintiff can still perform light work except that she can "never climb ladders/ropes/scaffolds, and she can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl." (AR 17) (citing 20 C.F.R. § 416.967(b)). In explaining her determination, the ALJ reviewed Plaintiff's testimony about her symptoms and their effects on daily life, treatment and medication history, and several physical examinations. (AR 18–21). The ALJ also discussed the opinions of CNP Andrea Chavez-Benavidez, psychotherapist Kara Ismay, LPCC, FNP Rasha Yaghan, PMHNP Tracey Simmons, and several state agency physicians and psychologists. (AR 20–21). Relevant here, the ALJ found Chavez-Benavidez's opinions unpersuasive for the following reasons: "[The] form was not supported by a sufficient explanation; it was not consistent with treatment notes; and it was not relevant to the time period of this claim." (AR 20).

Based on the RFC, the ALJ questioned the testifying vocational expert on whether Plaintiff could perform her past relevant work as an office clerk. The expert testified that her past office clerk work is classifiable as light exertion and semi-skilled. (AR 21). Therefore, the ALJ concluded that Plaintiff could perform past relevant work after the onset date of July 1, 2019, and did not qualify as disabled under the Social Security Act. (AR 22).

### IV.    BRIEFING SUMMARY

Plaintiff challenges the Commissioner's final decision on two grounds. [Doc. 12]. First, Plaintiff argues that the ALJ erred by failing to find Plaintiff's vertigo was a medically determinable impairment despite supporting evidence in the record, causing her to underate its effects in the RFC analysis. *Id.* at 18. Second, Plaintiff argues that the ALJ failed to adequately consider Chavez-Benavidez's medical opinions, offering only a "rote, boilerplate" rationale. *Id.* at

19. The Commissioner responds that the ALJ supported her finding that Plaintiff's vertigo was not a medically determinable impairment with substantial evidence and still incorporated Plaintiff's vertigo into the RFC. [Doc. 18, at 4–8]. In addition, the Commissioner responds that the ALJ's discussion of the persuasiveness of Chavez-Benavidez's opinions, while brief, specified what the ALJ considered and satisfied the applicable legal standard. *Id.* at 8–11. Plaintiff replies that the record contains overwhelming, undisputed evidence that her vertigo was a medically determinable impairment, and the failure to find it as one by the ALJ is reversible because it was not expressly incorporated in the RFC. [Doc. 19, at 3–5]. As to her second argument, Plaintiff replies that while there is no "length" requirement for an ALJ's discussion of a medical opinion, the ALJ's discussion of Chavez-Benavidez's opinions was so brief that it precludes meaningful review. *Id.* at 6–8.

## V.    ANALYSIS

I recommend that the Court find the ALJ's determination that Plaintiff's vertigo is not a medically determinable impairment is supported by substantial evidence and otherwise harmless. I further recommend that the Court find the ALJ's assessment of Chavez-Benavidez's opinions is sufficiently specific, capable of meaningful review, and supported by substantial evidence. Therefore, I recommend that the Court deny Plaintiff's motion to remand and affirm the Commissioner's final decision.

**A.    The ALJ's Finding That Plaintiff's Vertigo Is Not a Medically Determinable Impairment Was Supported by Substantial Evidence and Otherwise Harmless.**

*1.    Applicable law for establishing medically determinable impairments.*

In order to find a claimant suffers from a medically determinable impairment, either severe or non-severe, the impairment must result from "anatomical, physiological, or psychological abnormalities that can be shown by . . . objective medical evidence." 20 C.F.R. § 416.921. Objective medical evidence refers to "clinical and laboratory diagnostic techniques" and excludes

subjective symptoms, diagnoses, or medical opinions. *Id.*; *see also Thompson v. Sullivan*, 987 F.2d 1482, 1488–89 (10th Cir. 1993) (objective evidence is evidence that can be discovered and substantiated by external testing or examination). Laboratory diagnostic techniques may include chemical tests, electrophysiological studies, medical imaging, and psychological tests. 20 C.F.R. § 416.902(g). Clinical diagnostic techniques, in turn, are other valid scientific methods by which a "medical sign"—the anatomical, physiological, or psychological abnormality causing a claimant's impairment—can be objectively observed or established. *Id.* § 416.902(l); SSR 16-3p, 2017 WL 5180304, at *3 (2017).

Step two, the step at which the ALJ establishes a claimant's medically determinable impairments, only requires the ALJ to find at least one severe impairment or combination of impairments to avoid a finding of non-disability and proceed to step three. *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Thus, if an ALJ does not find a medically determinable impairment at step two but still proceeds to steps three and four, the error is harmless so long as the ALJ adequately discusses and incorporates the impairment's symptoms into the RFC analysis. *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (failure to find a medically determinable impairment "essentially a step-four error").

2.    *The ALJ did not err at step two or step four with respect to Plaintiff's vertigo.*

I recommend the Court find that the ALJ based her assessment of Plaintiff's vertigo at step two and step four on substantial evidence. Plaintiff asserts her vertigo is beyond dispute and supported by multiple diagnoses and notes from prior doctor visits. [Doc. 12, at 5–6]; [Doc. 19, at 3]. However, an ALJ cannot find a medically determinable impairment based on statements of symptoms, diagnoses, or medical opinions alone. 20 C.F.R. § 416.921. While Plaintiff points to several places in the record where treatment providers and examiners diagnosed and discussed

7

Plaintiff's vertigo, none of these identify what, if any, laboratory or clinical diagnostic technique the providers used to corroborate Plaintiff's subjective reports. *E.g.*, (AR 948, 963, 1088, 1101, 1135). The ALJ even cited to one provider who believed Plaintiff's vertigo could be caused by Ménière's disease but who never established its presence by objective medical evidence. (AR 15, 936). Because uncorroborated diagnoses and opinions cannot establish a medically determinable impairment on their own, the ALJ's step-two findings were sound.

Furthermore, the ALJ's RFC analysis renders any step-two error harmless. *See Ray*, 657 F. App'x at 734. Plaintiff argues that the ALJ never considered her vertigo symptoms because the opinion does not expressly mention them beyond Plaintiff's testimony. [Doc. 19, at 4–5]. However, after listing Plaintiff's "vertigo . . . vision problems, and balance problems" among her symptoms, the ALJ found that her "medically determinable impairments could reasonably be expected to cause" them. (AR 18). The ALJ also discussed Plaintiff's report of vertigo among the symptoms she described to FNP Rasha Yaghan on September 23, 2023, and the effects those symptoms had on her gait, walking, hopping, squatting, strength, range of motion, dexterity, and vision. (AR 19). The ALJ relied upon this evidence to find Plaintiff had more severe mobility and balance restrictions than several medical opinions concluded. (AR 20–21). Thus, the ALJ did consider Plaintiff's vertigo, incorporated its effects into the RFC, and based the RFC on substantial evidence.

Plaintiff alternatively argues that the ALJ's step two finding is reversible per se, even if she did adequately consider her vertigo symptoms at step four, because the ALJ was precluded by law from considering her vertigo once she found it was not a medically determinable impairment. [Doc. 19, at 4]. I recommend the Court find this argument unpersuasive for two reasons. First, it is contrary to Tenth Circuit decisions. *Ray*, 657 F. App'x at 734; *see Carpenter v. Astrue*, 537 F.3d

1264, 1266 (10th Cir. 2008); *see also Allman*, 813 F.3d at 1330–31. Second, the ALJ appropriately considered Plaintiff's vertigo as a symptom of her other established medically determinable impairments. (AR 15, 18); *see* SSR 16-3p, at *4 (an ALJ will consider a claimant's symptom if an established impairment is capable of producing the symptom).

In sum, I recommend finding the ALJ applied the correct legal standards and relied on substantial evidence to determine Plaintiff's vertigo was not a separate impairment but a symptom of other impairments. The ALJ further incorporated those symptoms adequately into Plaintiff's RFC.

**B.      The ALJ Adequately Assessed Chavez-Benavidez's Medical Opinions.**

  *1.      Applicable law for assessing medical opinions' persuasiveness.*

The ALJ must review all proffered medical opinions on a claimant's limitations as part of the whole record and explain how they impacted the RFC analysis. *Vigil*, 805 F.3d at 1201–02. Factors for review include the doctor's examining and treatment relationship with the claimant, the support for the opinion, its consistency with the record as a whole, the specialization of the doctor, and any other important consideration. 20 C.F.R. § 416.920c(c). The most critical factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). The ALJ need not mention every listed factor so long as she at least discusses the supportability and consistency factors and adequately supports her discussion. *Id.*; *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ may not downplay, mischaracterize, or cherry-pick elements from a medical opinion to support her RFC determination without explanation, or otherwise fail to discuss uncontroverted or significantly probative evidence. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018).

  *2.      The ALJ adequately assessed the persuasiveness of Chavez-Benavidez's opinions.*

I recommend the Court find the ALJ followed applicable standards and based her assessment of Chavez-Benavidez's medical opinions on substantial evidence. Plaintiff argues that the ALJ's discussion of these opinions is rote, vague, and requires the Court to engage in post-hoc rationalization to justify. [Doc. 12, at 19]; [Doc. 19, at 7]. However, an ALJ need not cite nor reference individual exhibits while explaining an opinion's persuasiveness so long as she clearly articulates what she relies on in the record, and the record justifies that reliance. *Frazer v. Kijakazi*, No. 20-cv-01147, 2022 WL 682661, at \*5 (D.N.M. Mar. 8, 2022). In *Frazer*, the ALJ stated that an opinion was less persuasive because the physician "never referred the claimant to a specialist . . . [and the physician's] treatment records do not support the claimed severity of claimant's condition." *Id.* The Court found the reference to the physician's treatment records and lack of specialist referral sufficient to articulate the ALJ's reasoning and conclusion. *Id.* at \*6.

The ALJ here similarly explained the persuasiveness of Chavez-Benavidez's medical opinions. While the ALJ did not cite or discuss specific exhibits, she did state that the opinions lacked sufficient explanation for their conclusions, predated the onset date of Plaintiff's alleged disability, and were inconsistent with "treatment notes." (AR 20). Review of Chavez-Benavidez's opinions show that while she listed the extent of Plaintiff's physical impairments, she did not explain what examination results, records, or observations she relied on other than Plaintiff's diagnoses. (AR 1284). And the ALJ specifically discussed Plaintiff's post-July 2019 treatment notes throughout her RFC. (AR 19). Those notes contain substantial evidence that Plaintiff's ambulation and posture issues, especially her sitting issues, were not as severe as Chavez-Benavidez opined. *Compare, e.g.*, (AR 774, 866, 1119, 1211), *with* (AR 1281). Reference to these treatment notes does not constitute post-hoc rationalization. *See Fischer-Ross*, 431 F.3d at 734 (an ALJ's analysis may summarily reference more detailed discussions of evidence elsewhere in the

10

opinion). Instead, the notes demonstrate the record contains substantial evidence for the ALJ's conclusion. Plaintiff's citation of treatment notes which are consistent with Chavez-Benavidez's opinions does not make the ALJ's decision reversible. *See Langley*, 373 F.3d at 1118.

In sum, I recommend finding the Court can trace the ALJ's reasoning to see she discounted Chavez-Benavidez's opinions because she failed to adequately explain her conclusions and several treatment notes taken after the onset date were inconsistent with them. *Keys-Zachary*, 695 F.3d at 1166. Therefore, the ALJ satisfied the articulation requirement of 20 C.F.R. § 416.920c(b).

## VI.    CONCLUSION

I recommend the Court DENY Plaintiff's motion to remand [Doc. 12] and AFFIRM the Commissioner's final decision.

HON. JERRY H. RITTER
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**